IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN CHARLES COLGAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | NO. 09-0938 |
| Commissioner of Social Security | : | |

REPORT AND RECOMMENDATION

JACOB P. HART  DATE: 8/11/09
UNITED STATES MAGISTRATE JUDGE

     Kevin Charles Colgan brought this action under 42 U.S.C. § 405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits (DIB). He has filed a Request for Review to which the Commissioner has responded. For the reasons that follow, I recommend that Colgan's motion be denied and judgment entered in favor of the Commissioner.

I.    Factual and Procedural Background

     Colgan was born on January 19, 1952. Record at 108. He worked for thirty years as a high school social studies teacher. Record at 125. On August 1, 2006, he submitted a claim for benefits, asserting disability since September 12, 2003, caused by depression, anxiety, panic attacks, sleep apnea, ADD, "inertia" and "mini-seizures." Record at 124.

     Colgan's application was denied initially. Record at 63. He then sought a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 73. The hearing was held on November 19, 2007. Record at 22. On December 17, 2007, however, the ALJ issued a written decision denying benefits. Record at 9. The Appeals Council denied Colgan's request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner. Record at 1. Colgan then filed this action.

II.  <u>Legal Standards</u>

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); <u>Richardson v. Perales</u>, 402 U.S. 389 (1971); <u>Doak v. Heckler</u>, 790 F.2d 26, 28 (3d Cir. 1986); <u>Newhouse v. Heckler</u>, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. <u>Richardson v. Perales</u>, <u>supra</u> at 401; <u>Kangas v. Bowen</u>, 823 F.2d 775 (3d Cir. 1987); <u>Dobrowolsky v. Califano</u>, 606 F.2d 403 (3d Cir. 1979). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. <u>Coria v. Heckler</u>, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (I) At the first step, we consider your work activity if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you

2

are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

III.     The ALJ's Decision, and Colgan's Request for Review

In his decision, the ALJ determined that Colgan had the severe impairments of depression and an anxiety disorder. Record at 14. He did not entirely credit Colgan's testimony regarding the extent of his limitations. Record at 18. The ALJ decided that Colgan retained the RFC to perform work at all exertional levels, but with the following limitations:

> He is limited to simple, routine work tasks in a stable and predictable work environment. He must be limited to working with things, and not data or people. He must have no contact with the general public. He must be able to work primarily on his own and not as a member of a team. Lastly, out of an abundance of caution, he is permitted all necessary seizure precautions.

Record at 16.

Based on the testimony of a vocational expert ("VE") who appeared at the hearing, the ALJ decided that, although Colgan could not return to his past work, he could work as a cleaner/housekeeper, a mail clerk (non-postal), or as a security guard. Record at 20. He concluded, therefore, that Colgan was not disabled.

In his Request for Review, Colgan maintains that the ALJ improperly assessed his RFC. Specifically, he argues that the ALJ wrongly failed to credit his testimony. He also argues that the ALJ wrongly failed to give due weight to the evidence provided by his treating psychiatrist and therapist, particularly criticizing the ALJ's determination that he could work even if he had marked impairment in eight major mental functions, as his psychiatrist indicated.

3

IV.  Discussion

A.   Evidence From Treating Medical Practitioners

1.   Dr. Kron's Evidence

The record contains a Medical Source Statement Of Ability To Do Work-Related Activities form signed jointly by Kenneth Kron, M.D., and Colgan's therapist, John Ivers, MSW. Record at 206-212. The Medical Source Statement indicates that Colgan has marked limitations in his abilities to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) make judgments on simple, work-related decisions; (4) interact appropriately with the public; (5) interact appropriately with supervisors; (6) interact appropriately with co-workers; (7) respond appropriately to work pressures in a usual work setting; and (8) respond appropriately to changes in a routine work setting. Record at 207. The note explaining these assessments reads: "2 years treating PT."

> The ALJ wrote:
>
> Dr. Kron has a medical specialty in psychiatry but is not board-certified. There are no accompanying records from him in the exhibit file so his opinion is of limited value. Dr. Kron indicated the claimant was markedly limited in several areas of functioning. Despite this, the vocational expert testified, with those limitations set forth in the form, the claimant would still be capable of doing the low-level entry positions that she identified. These jobs do not require much in adjusting to changes and handling work pressure. They are low-stress in nature and require very little interaction with supervisors.

Record at 18.

Indeed, that was the VE's testimony. According to the Medical Source Statement form itself, a "marked" impairment means "there is serious limitation in this area; the ability to function is severely limited but not precluded." Record at 206. The vocational expert testified:

4

> [F]irst of all, detailed instructions aren't ... an issue. Okay. Simple work-related decisions. Yeah, there's a problem. Public isn't an issue. Supervisors is rarely an issue. Coworkers is not going to be a factor here. Work pressures and work setting changes certainly are there but it's not enough to preclude functioning and most of those stressors that are mentioned aren't part of this job ... typical job duties. ... They're very low stress. They don't require a lot of changes and the changes are very minor and the interactions with other people is kept at a very minimum. To say you'll never see a supervisor is not correct but you will not see a supervisor working right beside you or monitoring you at any close level.

Record at 57-58.

I agree with Colgan that the fact that Dr. Kron is not board certified is irrelevant. There is nothing in the Social Security regulations permitting an ALJ to personally evaluate the credentials of a degreed expert. The ALJ's other comments about Dr. Kron's evidence are, however, well-taken. As above, the VE specifically testified that Colgan could perform the identified jobs even with all of the marked limitations found by Dr. Kron. The testimony quoted above is within the parameters of a VE's expertise.

Moreover, the lack of treatment notes from Dr. Kron does cast some doubt on the extent of his relationship with Colgan. At the hearing, Colgan's attorney referred to Dr. Kron as a consultative examiner. Record at 7. In his Request for Review, however, it is claimed that Dr. Kron was a treating physician who met with Colgan once every two weeks. Colgan's Brief at 7, and see Record at 209. It is evident from the dual signing of the forms that Dr. Kron works with Mr. Ivers at the Philmont Guidance Center. Record at 208. However, it is equally apparent from the treatment notes that Colgan's bi-weekly therapy sessions were with John Ivers, and not with Dr. Kron. Record at 285-314. Also, the forms note that Colgan's medication was prescribed by his "P.C.P." (presumably his primary care physician). Therefore, it is not even clear that Dr. Kron saw Colgan for short medicine checks.

5

Therefore, the ALJ's hesitations in accepting Dr. Kron's findings in full were supported by substantial evidence. In any event, the ALJ was entitled to rely on the VE's testimony that even with the marked limitations indicated by Dr. Kron, Colgan could still perform the isolated, low-stress jobs she had identified.

2. <u>John Ivers' Evidence</u>

The ALJ also failed to credit in full the evidence provided by John Ivers, MSW, Colgan's treating therapist. He wrote:

> The claimant's therapist Mr. Ivers filled out a Psychiatric Review Technique Form assessing severe mental impairments with marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace, and three episodes of decompensation, each of extended duration. This assessment is in contrast to his many progress notes reporting, e.g., that the claimant's mood was stable and his prognosis "good." There was no support for such extensive limitations. The Psychiatric Review Technique Form is given little weight. Again, this is based on the lack of support for such extensive limitations in all of the medical evidence of record. Additionally, a Global Assessment of Functioning ("GAF") score of 45 was listed on the first page of the form. Nowhere in the medical evidence of record is this score reflected.

Record at 18, referring to Record at 263-275.

The ALJ's description of Ivers' treatment notes is only partly accurate. Many of the notes have such negative observations as "patient having difficulty with negative thoughts" (Record at 287); "patient cites decrease in energy level and difficulty organizing his daily activities" (Record at 290); or, commonly, "anxiety level increased" (Record at 291, 292, 293, 294, 295, 297, 300, 301, 305, 307).

Nevertheless, all of Ivers' notes are very brief, usually with only two short sentences. A longer note might have been expected for severe or complicated symptoms. They do not, therefore, fully support Ivers' findings on the Psychiatric Review Technique Form.

Even more striking is the fact that Colgan never saw Ivers very frequently. Only fifteen progress notes were submitted for therapy sessions between November 11, 2003 and November 30, 2004. Record at 298-314. It appears that Colgan only went to therapy five times in 2005, and five times in 2006. Record at 288-298. Notes were submitted for five therapy sessions between March 2, 2007 and November 12, 2007. Record at 277, 285-287. Colgan has not argued that progress notes are missing.

On the one hand this scanty treatment record seems to substantiate Colgan's claim that he has trouble getting organized and making it to appointments. On the other hand, however, it is simply not the treatment you would expect for an individual suffering from numerous marked mental health limitations. The ALJ was therefore justified in deciding that Ivers' progress notes did not support his findings on the Psychiatric Review Technique form.

B.  Other Medical Evidence

The ALJ was also entitled to rely upon the September 28, 2006, Psychiatric Review Technique Form and Mental RFC Assessment completed by John Gavazzi, Psy.D., a reviewing agency medical expert. Record at 235. Dr. Gavazzi concluded that, although Colgan suffered from depression and an anxiety disorder, he was only moderately limited in (a) his ability to understand, remember, and carry out detailed instructions, (b) his ability to interact appropriately with the general public; and (c) his ability to accept instructions and respond appropriately to criticism from supervisors. Record at 235, 248-249. According to Dr. Gavazzi, Colgan was not otherwise limited.

The Social Security regulations provide that the opinion of a reviewing expert, who does not meet with the patient, is not weighed as heavily as the opinion of a treating physician. 20

7

CFR § 404.1527(d). However, in this case, the evidence provided by the treating mental health specialists in the form of treatment records was inconsistent with the other evidence they provided (or in the case of Dr. Kron, did not provide at all). The ALJ was certainly entitled to consider Dr. Gavazzi's reports along with the other medical evidence in making his decision.

C.   Colgan's Testimony

At the hearing, Colgan testified that he could not work because of his difficulties in concentration, and with following directions and completing paperwork. Record at 36. He testified that he stopped teaching because he could no longer even remember the students' names, and had a hard time with lesson planning and record keeping. Record at 36-37. Also, because of sleep difficulties, it was hard for him to get out of bed in the morning and he was often late or missed a day of work. Record at 39, 50. These symptoms became severe in 1999, the year that his father died and his wife filed for divorce. Record at 37.

Colgan testified that, at the time of the hearing, he still had trouble getting out of bed, and perhaps twice a week he would not shower or shave. Record at 39-40. He testified that he got housework done eventually, but could not stay with one project for longer than ten minutes. Record at 42. At times, he also watched a great deal of TV. Record at 43-44. He had difficulty sleeping at night due to anxiety, and consequently suffered from fatigue during the day. Record at 44. Colgan also said that he suffered from panic attacks "a couple times a week." Record at 47. He did not like being in crowds, and avoided interaction with other people. Record at 47-48.

An ALJ is empowered to evaluate a claimant's credibility. Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983). Even if an ALJ concludes that a medical impairment exists which could reasonably cause the symptoms alleged, he must evaluate the intensity and persistence of

8

the symptoms, and the extent to which they affect the claimant's ability to work. 20 CFR § 404.1529(b) and (c); Hartranft v. Apfel, 181 F.3d 358 (3d Cir. 1999). In doing so, he may consider such factors as the internal consistency of the claimant's own statements, the medical evidence, and the claimant's medical treatment history. 20 C.F.R. § 1529.

Here, the ALJ determined that Colgan's depression and anxiety could reasonably cause the symptoms to which he testified, but that his testimony concerning the extent of his limitations was not entirely credible.

As has already been discussed, Colgan's scanty medical treatment history did not support his claim of disabling mental illness. Neither was his claim fully supported by the medical evidence. Moreover, according to Colgan himself, his activities of daily living were not altogether restricted. His son lived with him every other week, and when he was there, Colgan would drive him to and from school every day. Record at 31. He also drove other places, several times a week. Id. He cooked his son simple dinners, such as pasta. Record at 41. He also regularly tidied up the house, did his laundry, and did his own grocery shopping. Record at 41-42.

Colgan also testified that he had a girlfriend whom he saw approximately twice a week; he met her on Boathouse Row. Record at 51. On this record, the ALJ's conclusion that Colgan's testimony was not entirely credible was supported by substantial evidence.

Colgan argues that he is entitled to have his testimony credited since he has a long work history. It is important to note that the ALJ by no means entirely disbelieved him. He credited all evidence of depression and anxiety to the extent that he found Colgan could not return to his high-stress work as a high school teacher, or any other stressful occupation. However, he did not find that Colgan was completely unable to work in a low-stress job.

Accordingly, I make the following:

## RECOMMENDATION

AND NOW, this 11 day of August, 2009, it is RESPECTFULLY RECOMMENDED that Plaintiff's Request for Review be DENIED and that judgment be entered in favor of the Defendant.

FILED
AUG 11 2009
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

BY THE COURT:

_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN CHARLES COLGAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | NO. 09-0938 |

<u>O R D E R</u>

R. BARCLAY SURRICK, J.

AND NOW, this       day of                      , 2009, upon consideration of the Plaintiff's Request for Review and the Defendant's response thereto, and after careful review of the Report and Recommendation of United States Magistrate Jacob P. Hart, IT IS ORDERED that:

1. The Claimant's Request for Review is DENIED; and

2. Judgment in this matter is ENTERED in favor of DEFENDANT.

BY THE COURT:

_____
R. BARCLAY SURRICK, J.